IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 10-cv-00976-REB

CORINTHIAN PRENTISS,

      Applicant,

v.

WARDEN ANGEL MEDINA, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER DENYING PETITION FOR HABEAS CORPUS

---

Blackburn, J.

      The matter before the Court is Applicant's Amended Application For A Writ Of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 9).  The Court has determined

that the Application can be resolved on the parties' briefing and that no oral argument or

evidentiary hearing is necessary.[1]


I.      **Background**

      In February 2003, a jury in Arapahoe County, Colorado District Court case

number 01CR1399 found Applicant guilty of sexual assault on a child (at-risk juvenile),

sexual assault on a child by one in a position of trust (at-risk juvenile), and aggravated

---

[1]*See* 28 U.S.C. § 2254(e); Fed. R. Governing Section 2254 Cases 8(a).

incest.  Additionally, the jury made unanimous findings that the Applicant committed both oral and vaginal penetration.

The victim in this case was Applicant's thirteen year old step-daughter.[2]  She has an IQ of 49, placing her on the borderline between "mild" and "moderate" mental retardation.  She developed a father-daughter relationship with Applicant during his marriage to her mother when all three resided together in Iowa.  After Applicant separated from the victim's mother, the victim visited him and his new girlfriend at his Colorado residence.

Applicant's girlfriend subsequently drove back to Iowa with the victim.  During this drive, the girlfriend asked the victim whether there was anything Applicant told the victim not to tell her, to which the victim answered that she had anal sex with him.

A child advocacy center interviewed the victim before trial.  The victim reported that similar abuse had taken place while living with Applicant in Iowa.  She described Applicant putting his penis in her "poop part" and not her "pee part."  This taped interview was played for the jury at trial.

A medical expert testified at trial that a small healed tear in the victim's hymen was consistent with vaginal penetration by a blunt object, such as a penis.  The expert testified that the tear likely occurred during the "primary event" or "first time of penetration," but found no evidence of anal trauma.

_____

[2]These facts are adapted from the summary provided in People v. Prentiss, 172 P.3d 917 (Colo. App. 2006).  Applicant does not challenge the basic factual findings of the state courts, and these findings are presumed correct. See 28 U.S.C. § 2254(e)(1).

The victim was found competent to testify at trial and testified that Applicant engaged in anal and oral sex with her on several occasions when visiting him in Colorado.  However, her testimony was unclear as to whether there was anal penetration, vaginal penetration, or both.  The medical expert established that the victim had difficulty distinguishing between vaginal and anal penetration, and opined that all of her injuries were consistent with vaginal penetration, rather than anal penetration.

Following the verdict, Applicant was sentenced to an indeterminate term of twenty-four years to life for each conviction.  The Colorado Court of Appeals (CCA) affirmed his conviction,[3] and the Colorado Supreme Court denied certiorari review.[4]

On July 2, 2010, Applicant filed an Amended Application For Writ Of Habeas Corpus which contained three claims.[5]  Respondents thereafter filed a pre-Answer response that challenged portions of the Amended Application on both exhaustion and subject matter grounds.[6]

On September 13, 2010, District Judge Christine M. Arguello partially dismissed a portion of the Application for failure to raise a cognizable federal habeas issue.[7] However, Judge Arguello found that the remainder of Applicant's claims were properly

---

[3]Prentiss, 172 P.3d 917.

[4]Prentiss v. People, No. 07SC455, 2007 WL 2584790 (Colo. Sep. 10, 2007).

[5]Doc. No. 9.  The Amended Application was timely filed. 28 U.S.C. § 2244(d); Order (Doc. No. 16; Sep. 13, 2010), at 3.

[6]Doc. No. 15 (July 28, 2010).

[7]Order (Doc. No. 16), at 4.

exhausted for purposes of habeas review and ordered the Amended Application to be drawn to a district judge.[8]

Respondents subsequently filed a full response on October 12, 2010.[9]  Applicant did not file a traverse.

## II.    Habeas Claims

Two unresolved claims remain in the Amended Application:

•    **Claim 1:** The state trial court violated Applicant's Sixth Amendment confrontation rights by preventing him from cross-examining the victim at trial about her sexual history.

•    **Claim 2:** Applicant's due process rights were violated as a result of prosecutorial misconduct in the closing argument.

## III.    Legal Standard

### A.    Habeas Corpus Actions

Because Applicant filed his Application after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), that statute governs the Court's review.[10]  Under the AEDPA, a district court may only consider a habeas

---

[8]Id. at 6-7.

[9]Doc. No. 21.

[10]Cannon v. Mullin, 383 F.3d 1152, 1158 (10th Cir. 2004) (*citing* Rogers v. Gibson, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999)).

petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."[11]

As a prerequisite to filing a federal habeas case, a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."[12]  The Court has previously found that Applicant has exhausted state remedies for his remaining claims.[13]

When reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.[14]  "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*."[15]

 A writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[16]

---

[11]28 U.S.C. § 2254(a).

[12]O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

[13]Order (Doc. No. 16).

[14]*See* Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

[15]Coleman v. Thompson, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

[16]28 U.S.C. § 2254(d)(1).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).[17]  The threshold question pursuant to § 2254(d)(1) is whether a petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.[18]  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."[19]  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.[20]

If there is no clearly established federal law, that is the end of the Court's inquiry.[21]  If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.[22]

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the

---

[17] *See* <u>Cook v. McKune</u>, 323 F.3d 825, 830 (10th Cir. 2003).

[18] *See* <u>Williams v. Taylor</u>, 529 U.S. 362, 390 (2000).

[19] <u>Id.</u> at 412.

[20] <u>House v. Hatch</u>, 527 F.3d 1010, 1016 (10th Cir. 2008).  "Supreme Court holdings . . . must be construed narrowly and consist only of something akin to on-point holdings." <u>Id.</u> at 1015.

[21] <u>Id.</u> at 1017-18; <u>Carey v. Musladin</u>, 549 U.S. 70 (2006).

[22] *See* <u>Williams</u>, 529 U.S. at 404-05.

state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent."[23]   "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'"[24]

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts.[25]   Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.[26]

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one.[27]  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather that application must also be unreasonable."[28]  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the

---

[23]Maynard v. Boone, 468 F.3d 665, 669 (10th Cir. 2006) (internal quotation marks and brackets omitted) (*quoting* Williams, 529 U.S. at 405).

[24]Williams, 529 U.S. at 405 (citation omitted).

[25]Id. at 407-08.

[26]House, 527 F.3d at 1018.

[27]*See* Williams, 529 U.S. at 409-10.

[28]Id. at 411.

state court misapplied Supreme Court law."[29]  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254."[30]

Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Applicant bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'"[31]

The Court "owes deference to the state court's *result*, even if its reasoning is not expressly stated."[32]  Therefore, the Court "must uphold the state court's summary decision unless [an] independent review of the record and pertinent federal law persuades [the Court] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented."[33]  "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims."[34]

---

[29]Maynard, 468 F.3d at 671.

[30]Id.

[31]Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (*quoting* Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).

[32]Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999).

[33]Id. at 1178.

[34]Id.

**B.**     *Pro Se* **Litigant**

Applicant is proceeding *pro se.*  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."[35]  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."[36]  A court may not assume that an applicant can prove facts that have not been alleged or that a respondent has violated laws in ways that an applicant has not alleged.[37]  The Applicant's *pro se* status does not entitle him to an application of different rules.[38]

**IV.     Analysis**

**A.     Claim 1: Confrontation Clause Violation**

Applicant claims that his Sixth Amendment right to confront witnesses against him was violated when the trial court prohibited him from asking the child victim about whether she was sexually active with others besides him.

A critical piece of the government's case was physical evidence of trauma, consistent with a blunt object, to the victim's hymen.  Since the victim denied ever inserting an object into her vagina, such as a tampon, the prosecution argued that this

---

[35]Trackwell v. United States, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also* Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

[36]Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[37]Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

[38]*See* Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002).

trauma could have only been caused by sexual penetration from Applicant, the one individual she reported having sexual contact with.

Applicant sought to cross-examine the victim on whether she was sexually active with other individuals to rebut the prosecution's contention that her hymen injury was evidence of his guilt.  The trial court prohibited this line of questioning under Colorado's rape shield statute.[39]  On appeal, the CCA held that "where, as here, the prosecution introduces hymenal evidence and urges the jury to infer from it that an unlawful sexual act occurred, the victim's physical condition becomes an issue."[40]  The CCA determined the trial court had erred in prohibiting this testimony under the rape shield statue because a defendant "should be given a reasonable opportunity to inquire whether a young victim was sexually active with other persons in a manner that could have caused her hymenal injury."[41]

However, the CCA found that despite this error reversal was not warranted because Applicant had failed to lay a sufficient foundation under the rules of evidence to allow the requested inquiry.  "This foundational requirement protects victims of sexual assault from humiliating 'fishing expeditions' into their sexual conduct."[42]  Thus, the trial court was found not to have abused its discretion by precluding the cross-examination.

---

[39]Colo. Rev. Stat. § 18-3-407 (2006).

[40]Prentiss, 172 P.2d at 923.

[41]Id.

[42]Id. (quoting People v. McKenna, 585 P.2d 275, 278 (1978)).

10

The Confrontation Clause guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."[43]  It is clearly established federal law that this clause encompasses the right to cross-examine these witnesses.[44]  However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[45]  Therefore, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[46]

Here, the state court found that Applicant presented no evidence that the victim's hymenal injury was caused by any prior sexual activity:

> Although she admitted during the videotaped . . . interview that she had "boyfriends," she never admitted or even suggested she had engaged in any sexual activity with them, much less vaginal intercourse.  She was specifically asked during the . . . interview whether anybody else had touched her in the same way that defendant did, and she said no.  And, during her physical examination, she told the medical expert she was not aware that any other kind of prior vaginal penetration had occurred.[47]

---

[43]U.S. Const. amend VI.

[44]Douglas v. Alabama, 380 U.S. 415, 418 (1965).

[45]Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

[46]Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam) (emphasis in original).

[47]Prentiss, 172 P.3d at 924.

11

Simply put, there was a total lack of foundation for inquiring into the victim's previous sexual history.  Precluding cross-examination on this topic was proper as the Confrontation Clause does not protect an accused's right to engage in a fishing expedition in the hopes of uncovering potentially relevant evidence.[48]  The CCA's decision was not contrary to, or an unreasonable application of, clearly established federal law.[49]

Further, even assuming the trial court erred in not allowing questioning on the victim's sexual history, this error is harmless since it only affected the issue of whether defendant vaginally penetrated the victim, not whether he also orally penetrated her.[50]  Since the jury unanimously found oral penetration, which was based on independent evidence from the hymen testimony, absence of vaginal penetration would not affect any of the convictions obtained in this case.

Therefore, Applicant's first claim is denied.

**B.     Claim 2: Prosecutorial Misconduct**

Applicant claims that his due process rights were violated when the prosecutor made inappropriate statements during his closing argument.  Applicant objects to the

---

[48] *See* Van Arsdall, 475 U.S. at 679; Prentiss, 172 P.3d at 923-24.

[49] *See* Saiz v. Ortiz, 392 F.3d 1166, 1183 (*citing* Early v. Packer, 537 U.S. 3 (2002)) ("Although the state appeals court did not cite to Van Arsdall, such citation is not required, so long as neither the reasoning nor the result of the state court decision contradicts Van Arsdall.").

[50] *See* Prentiss, 172 P.3d at 926.

prosecutor's statements that there was no evidence that the victim's hymen injury was

caused by anyone other than the Applicant, since he was prevented from questioning

the victim about precisely this topic.  Specifically, Applicant objects to the following

statement:

> Supported or contradicted.  What does Dr. Easter's testimony
> tell you?  Blunt trauma to her hymen, something tore her
> hymen . . . did [the victim] ever say that it hurt to use a
> tampon?  No.  Did she ever say that she was sexually active
> with anybody else?  Has she said anybody else did this but
> him?  No.[51]

It is clearly established Supreme Court law that improper prosecutorial comments

during closing argument can violate a defendant's due process rights.[52]  However,

prosecutorial misconduct does not warrant federal habeas relief unless the conduct

complained of "so infected the trial with unfairness as to make the resulting conviction a

denial of due process."[53]

The CCA found that Applicant made no contemporaneous objection to the

statements he claims were prejudicial and, therefore, review was limited to plain error.[54]

---

[51] Record, Volume 10, p. 141.

[52] Donnelly v. DeChristoforo, 416 U.S. 637 (1974)

[53] Id. at 643; see also Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990) (DeChristoforo fundamental unfairness analysis used when prosecutor's arguments did not infringe on any specific constitutional right).

[54] Prentiss, 172 P.3d at 926-27; Colo. R. Crim. P. 52(b).

The CCA concluded that, viewed in context, the prosecutor's statements did not constitute plain error.[55]

Colorado's test for determining whether there was plain error under state law is substantially identical to the substantive due process test.[56]  Thus the CCA's decision was a merits based review for purposes of the AEDPA.[57]  Because the state law plain error standard as applied by the CCA is the same as the federal due process standard - whether the trial was rendered fundamentally unfair by the prosecutor's actions - the deferential AEDPA standard of review applies and the question becomes whether the CCA decision was an unreasonable application of the due process standard.[58]

The Court finds that the CCA's decision was not an unreasonable application of federal law.  The prosecutor's statement was an accurate representation of the facts as presented at trial since no evidence was submitted that the victim had ever engaged in sexual contact with anyone besides Applicant.[59]  The prosecutor's statements did not render Applicant's trial fundamentally unfair and his second claim is denied.

## V.    Order

---

[55]Prentiss, 172 P.3d at 927.

[56]People v. Kruse, 839 P.2d 1 (Colo. 1992); *accord* Nguyen v. Reynolds, 131 F.3d 1340 (10th Cir. 1997).

[57]Cook v. McCune, 323 F.3d 825, 830-31 (10th Cir. 2003).

[58]Bland v. Sirmons, 459 F.3d 999, 1014 (10th Cir. 2006).

[59]Thornburg v. Mullin, 422 F.3d 1113, 1134 (10th Cir. 2005) (comments not improper if "firmly rooted in the facts of the case").

Accordingly, it is

ORDERED that Applicant's Amended Application For A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. No. 9; July 2, 2010) is denied and the Amended Application is dismissed with prejudice.  It is

FURTHER ORDERED that a certificate of appealability shall not issue because Applicant has not made a substantial showing of the denial of a constitutional right.[60]

Dated June 15, 2011, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge

---

[60]28 U.S.C. § 2253(c)(2); Fed. R. Governing Section 2254 Cases 11(a).